1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES MICHAEL STONE,                       No.  2:21-cv-1708 TLN AC P

12                  Petitioner,

13       v.                                     FINDINGS AND RECOMMENDATIONS

14   WARDEN, MULE CREEK STATE
     PRISON,
15
                    Respondent.
16

17

18       Petitioner is a California state prisoner proceeding pro se with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition which challenges

20   petitioner's 2015 conviction for two counts of lewd and lascivious conduct on a child under 14

21   years of age.  ECF No. 1.  Respondent has answered, ECF No. 14, and petitioner has filed a

22   traverse, ECF No. 20.

23                                       BACKGROUND

24   I.      Proceedings in the Trial Court

25       A.  Preliminary Proceedings

26       Petitioner was charged in Placer County with three counts of lewd and lascivious conduct

27   on a child under 14 years of age, involving two different victims, along with various

28   enhancements and alleged prior convictions.

                                                1

B.  The Evidence Presented at Trial

    1.  Prosecution Case[1]

       a.  Molestation of Jane Doe No. 1

On New Year's Day 2012, petitioner was visiting his sister, her husband, and their son. Also present was a friend and her eight-year-old daughter, Jane Doe No. 1.  Petitioner was cooking breakfast and Jane Doe No. 1 was watching him.  Petitioner touched her on her private part over her clothes.  (At trial, Jane Doe No. 1 testified that petitioner touched her vagina.  In an interview with the Multi-Disciplinary Interview Center (MDIC), she said that he touched her butt and grabbed her hand and made her touch and rub his penis, which she described as his "middle part" that he uses to pee.)  She ran away.  Later that day petitioner called to her and led her to a bedroom where he tried to kiss her.  He put his tongue in her mouth, which she found to be "gross."  After her mother returned from taking petitioner home, Jane Doe No. 1 told her mother what had happened.

Jane Doe No. 1's mother sent petitioner a text message a few days later.  She told him he was a "sick fuck" and that her daughter "told me."  Petitioner responded, "Oh, that I touched her? I didn't mean to, and I told her I was sorry.  Really, I didn't mean to."  Petitioner sent the message, "I really feel like crap. I really didn't mean to."  "I told her I was sorry and I didn't mean to.  I didn't know I made her feel bad about it.  I'm so sorry."  He sent several text messages that asked her not to hate him and to say something.  The mother responded, "How do you not mean to?"  Petitioner replied, "We were goofing around and it happened.  I would never intentionally want to make her feel weird around me."  "I feel like a dirty bastard."  When the mother did not respond, petitioner asked her to talk to him.  The mother declined to do so.  A few months later, she called the police because she was concerned petitioner might be touching other children.

       b.  Molestation of Jane Doe No. 2

Jane Doe No. 2 ("J.D.") is petitioner's daughter; she was four years old at the time

---

[1]  This summary is adapted from the opinion of the California Court of Appeal, ECF No. 15-13 at 3-8.

1   petitioner was arrested.  D.S. is her mother.  She and petitioner were married and have two

2   children.  They had separated many times and by the time of trial had not lived together for a few

3   years.  In July 2012 the children stayed with petitioner a few times.  On August 8, 2012, D.S.

4   learned that petitioner had been arrested for child molestation.  She spoke to J.D. about good and

5   bad touches and asked if Daddy had ever touched her or hurt her.  J.D. said yes.  After further

6   questioning, J.D. said, "Daddy touched my 'gina' and it hurt."

7         D.S. made an appointment with J.D.'s doctor.  The pediatrician examined J.D. the next

8   day.  He asked her if anyone had touched her in a bad way and she said yes.  She said Daddy

9   touched her and it hurt.  She indicated he touched her vagina.  The doctor examined her genitals

10  and found no trauma.

11        J.D. told a social worker from Child Protection Services that her father touched her "down

12  there" and pointed to her vagina.

13        J.D. was interviewed at the Multi-Disciplinary Interview Center (MDIC).  The interview

14  was videotaped and the recording was played at trial.  In the interview, J.D. said her father was

15  touching her "gina" and it hurts.  She said it occurred at the home of petitioner's sister.  She said

16  it was scary like a movie and refused to tell more because "it's just a bad thing."  "It's kinda

17  spooky."  After a break, J.D. said her younger brother stopped daddy and "saved me."  She said

18  her father "dicked me."  She said that meant weird things.  "It's so scary.  It's like Daddy won't

19  stop."  She said he stuck her with his "peanut" and "wiggled me," demonstrating hip thrusts.  She

20  said petitioner did not say anything, but she said stop; she wanted him to stop his "peanut" which

21  jiggled, "Like he was already popped."  She drew a picture of defendant "dicking her."  "He said,

22  I'm gonna dick you."  J.D. said what happened at her aunt's house was "daddy's fault."  "He

23  would just do it again."  He would do it after she said stop.

24        At trial, J.D. refused to answer any questions about the alleged molestation or her

25  discussions with others about the allegations.  She repeatedly gave answers which were non-

26  sequiturs or nonsensical.  She said that no one had ever touched her arm and that she did not

27  recognize her father.  She finally began discussing Halloween costumes and trick or treating until

28  both defense counsel and the prosecutor gave up.

1          c.   Propensity Evidence

2          As permitted by California law, the prosecution introduced evidence of petitioner's prior

3   convictions and pictures of child pornography on his phone.  In 2002 petitioner had been

4   convicted of three misdemeanor counts of annoying or molesting a child.  In 2000 he was

5   convicted of committing a lewd and lascivious act on a child under the age of 14.  The police

6   downloaded 25 images of child pornography from petitioner's cell phone.

7          2.   Defense Case

8          The defense offered the testimony of petitioner's sister and her husband that they did not

9   observe any inappropriate behavior by defendant on New Year's Day, and that Jane Doe No. 1

10  did not appear upset and did not avoid petitioner that day.  Three character witnesses testified

11  they had never observed petitioner behave inappropriately around their children and they trusted

12  him.  There was evidence that Jane Doe No. 1 sometimes lied.

13         Petitioner testified he touched Jane Doe No. 1 below the waist while he was tickling her.

14  When she said, "don't," he stopped.  He denied he touched her genitals or buttocks or moved her

15  hand to his body.  He testified she followed him down the hall when he went to take a nap.  He

16  told her playtime was over and she was disappointed.  She gave him a hug when he left.  He

17  denied any inappropriate conduct with J.D.

18         Petitioner denied ever deliberately accessing child pornography; he sometimes

19  downloaded entire files that contained groups of pictures.  He had a "game" with friends,

20  exchanging obscene pictures.  He looked for "oddities," such as obese men and women in "bitty"

21  thongs.[2]

22     C.  Outcome

23         The jury returned guilty verdicts on two counts of lewd and lascivious conduct involving

24  Jane Doe No. 1, and one count of lewd and lascivious conduct involving Jane Doe No. 2.  The

25  ////

26

27  [2]  In rebuttal, a detective testified he reviewed 5,600 images that were downloaded
from petitioner's phone.  None were "oddity" pornography and only one depicted male
28  genitalia.

4

jury also found that the case involved multiple victims within the meaning of Cal. Penal Code §
667.61(e)(4).

Various prior conviction allegations were bifurcated and tried to the court.  The court
found all but one of the allegations to be true.  The court denied petitioner's new trial motions,
and also denied a motion to dismiss the "strike" allegations for purposes of sentencing.  Petitioner
was sentenced to a total term of 155 years to life imprisonment.

II.      Post-Conviction Proceedings

Petitioner timely appealed.  On March 12, 2019, the California Court of Appeal reversed
the conviction on Count Three (involving Jane Doe No. 2), and the multiple victims
enhancement, on grounds that admission of Jane Doe No. 2's MDIC interview had violated
petitioner's right to confrontation in light of her refusal or inability to testify.  ECF No. 15-8.  The
judgment was affirmed as to Counts One and Two (the Jane Doe No. 1 counts).  Id.  On May 22,
2019, the California Supreme Court denied review.  ECF No. 15-15.  On October 30, 2019,
petitioner was resentenced in superior court to 100 years to life.

Petitioner filed a petition for writ of habeas corpus in the Placer County Superior Court on
June 10, 2019, which was denied in a written decision on October 18, 2019.  ECF Nos. 15-16, 15-
17.  Petitioner filed another habeas petition in the Placer County Superior Court on April 15,
2020, which was denied in a written decision on April 23, 2020.  ECF Nos. 15-18, 15-19.

Petitioner next filed a habeas petition in the California Court of Appeal, which was denied
without comment or citation on July 17, 2020.  ECF No. 15-21.  Petitioner thereafter filed another
habeas petition in the appellate court, which on September 18, 2020 was also denied without
comment or citation.  ECF No. 15-23.

Petitioner went on to file a habeas petition in the California Supreme Court,[3] which was
denied on February 10, 2021.  ECF No. 15-25.  A second petition to the California Supreme
Court was denied on July 21, 2021.  ECF No. 15-27.

////

---

[3]  This petition contained no claims for relief, but made a conclusory request for "summary
judgment" on the petition(s) previously filed in the Court of Appeal.  ECF No. 15-24.

1                STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

2           28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

3 1996 ("AEDPA"), provides in relevant part as follows:

4           (d) An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a state court shall not be

5           granted with respect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of the claim –

6

          (1) resulted in a decision that was contrary to, or involved an
7           unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

8

          (2) resulted in a decision that was based on an unreasonable
9           determination of the facts in light of the evidence presented in the
State court proceeding.

10

11           The statute applies whenever the state court has denied a federal claim on its merits,

12 whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

13 (2011).  State court rejection of a federal claim will be presumed to have been on the merits

14 absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

15 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

16 decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

17 may be overcome when there is reason to think some other explanation for the state court's

18 decision is more likely."  Id. at 99-100.

19           The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

20 principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

21 U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

22 Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

23 issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

24 (2013).

25           A state court decision is "contrary to" clearly established federal law if the decision

26 "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

27 U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

28 court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

1    the facts of the particular state prisoner's case." Id. at 407-08.  It is not enough that the state court

2    was incorrect in the view of the federal habeas court; the state court decision must be objectively

3    unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

4        Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

5    Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

6    reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

7    words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

8    Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

9    confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

10   724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

11   summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

12   state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

13   must determine what arguments or theories may have supported the state court's decision, and

14   subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

15                                    DISCUSSION

16   I.       Claims One and Two: Ineffective Assistance of Counsel

17           A.  Overview

18       Claim One alleges ineffective assistance of appellate counsel and Claim Two alleges

19   ineffective assistance of trial counsel.  Because these claims are factually and legally interrelated,

20   the court considers them together.  Here they are addressed in reverse order for ease of analysis.

21           B.  Petitioner's Allegations and Pertinent State Court Record

22               1.  Trial Counsel

23       In Claim Two, petitioner alleges that trial counsel was ineffective in the following ways.

24   First, counsel "failed to do any investigation on defendant's cell phone when images of scantily

25   dressed young girls were found by the prosecution.  Defense had been provided with the

26   downloaded contents of defendant's phone in October of 2013 but never reviewed that

27   download."  ECF No. 1 at 7.  Although the petition lacks factual detail, the record reflects that

28   petitioner—through counsel appointed for the purpose of a new trial motion—sought a new trial

                                          7

1    on grounds of an illegal cellphone search and trial counsel's ineffectiveness in failing to move for

2    suppression of photographic evidence seized from the phone.  II CT 452-467 (ECF No. 15-2 at

3    161-176).

4         Second, counsel refused to call as an expert witness Dr. William T. O'Donohue, a child

5    psychologist specializing in abused children.  Counsel did not believe that Dr. O'Donohue's

6    testimony would be sufficient to refute the testimony of Jane Doe No. 1, but during a posttrial

7    hearing the expert testified that he had not been provided all the documents necessary for a

8    complete evaluation.  Counsel did think that Dr. O'Donohue's testimony could refute that of Jane

9    Doe No. 2, but did not think it would be "much of a victory to have Mr. Stone found guilty of

10   Counts 1 and 2 and only avoid conviction as to Count 3."  ECF No. 1 at 7-8.  Although the

11   petition lacks both factual detail and a proffer of the expert opinion at issue, the record reflects

12   that petitioner brought a counseled motion for new trial raising this issue and including a Child

13   Abuse Investigation Report from Dr. O'Donohue.  II CT 471-519 (ECF No. 15-2 at 180-228).

14        Finally, counsel failed to present evidence contradicting Jane Doe No. 1's testimony that

15   she had been in petitioner's room.  The evidence consisted of a drawing that petitioner had made

16   of his room, which was corroborated by a drawing made by his sister and could have been further

17   corroborated by photographs taken by an investigator.  ECF No. 1 at 8.  No drawings or other

18   evidence are provided.  The record reflects that petitioner brought a pro se motion for new trial

19   which, among other things, referenced counsel's failure to present petitioner's "floorplan."  II CT

20   528 (ECF No. 15-2 at 237).

21                    2.  Appellate Counsel

22        In Claim One, petitioner alleges that his appellate lawyer refused to raise the claim of

23   ineffective assistance of trial counsel which had first been "presented in a new motion for retrial

24   in the trial court."  ECF No. 1 at 5.  "Appellate counsel claimed that trial counsel showed tactical

25   reasoning for not bringing the evidence in the motion at trial.  However, due to trial counsel's

26   failure to investigate, the evidence was not wholly available to trial counsel."  Id. (spelling

27   corrected).  The statement of this claim does not identify the evidence at issue or specify the

28   nature of trial counsel's alleged failure to investigate.  Nor does it specify the specific ineffective

8

1    assistance of counsel (IAC) claims that appellate counsel refused to include on appeal.

2        The trial IAC claims presented to this court in Claim Two were all included in motions for

3    a new trial brought in the superior court.  Only the IAC issue related to the cellphone was raised

4    on appeal.  See ECF No. 15-8 (Appellant's Opening Brief) at 2-3.  It is unclear whether petitioner

5    alleges that appellate counsel should have challenged the cellphone search and alleged related

6    ineffective assistance of trial counsel on additional grounds.

7          C.  The Clearly Established Federal Law

8        To establish a constitutional violation based on ineffective assistance of counsel, a

9    petitioner must show (1) that counsel's representation fell below an objective standard of

10   reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland,

11   466 U.S. 668, 692, 694 (1984).  The proper measure of attorney performance is objective

12   reasonableness under prevailing professional norms.  Id. at 688.  There is a rebuttable

13   presumption that counsel's strategic choices are reasonable.  Id. at 694-695.  Prejudice means that

14   the error actually had an adverse effect on the defense and that there is a reasonable probability

15   that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 693-

16   694.  The court need not address both prongs of the Strickland test if the petitioner's showing is

17   insufficient as to one prong.  Id. at 697.

18       A criminal defendant enjoys the right to the effective assistance of counsel on appeal as

19   well as at trial. Evitts v. Lucey, 469 U.S. 387, 391 (1985).  Claims of appellate ineffectiveness are

20   evaluated under the Strickland framework.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  To

21   demonstrate prejudice in the appellate context, petitioner must show a reasonable probability that

22   he would have prevailed on appeal absent counsel's alleged errors.  Smith, 528 U.S. at 285-286.

23         D.  The State Courts' Rulings

24           1.  Ineffective Assistance of Trial Counsel

25             a.  Failure to Challenge Cellphone Search and Resulting Evidence

26       The core of this claim was presented on direct appeal.  Because the California Supreme

27   Court denied discretionary review, the opinion of the California Court of Appeal constitutes the

28   last reasoned decision on the merits and is the subject of habeas review in this court.  See Ylst v.

1   Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).[4]

2       The Court of Appeal ruled as follows:

3           Defendant next contends he was denied effective assistance of
4           counsel because trial counsel failed to challenge the admission of
            images of child pornography on his cell phone.

5           A. *Background*

6           Detective Phelps arrested defendant on August 8, 2012, and seized
7           his cell phone. Police searched the phone incident to arrest; they
            used a virtual memory dump which does not download the entire
8           memory. [fn.: At the time, a warrantless search of a cell phone
            incident to arrest was authorized by *People v. Diaz* (2011) 51
9           Cal.4th 84, later overruled by *Riley v. California* (2014) 573 U.S.
            373.] At the time, the police were interested in text messages. They
10          found nothing illegal on defendant's phone.

11          During a jail visit a few days later, D.S. told defendant J.D. had
            accused him of molesting her. He denied the allegations, but stated
12          the police had taken his phone as evidence. He had sent several e-
            mails to doctors and defendant declared, "That's evidence against
13          me." When D.S. asked what was in the e-mails, defendant said,
            "Just what [his sister] told you I said." Detective Phelps took this to
14          mean defendant said something in the e-mail that might tend to
            incriminate him.

15          Detective Phelps then prepared a search warrant. He recited the
            facts set forth above, as well as that defendant had admitted some
16          abuse in text messages and a pretext phone call, and declared his
            belief that there was sufficient cause that defendant's phone
17          contained evidence that defendant had perpetrated lewd and
            lascivious acts with a child. The magistrate issued the warrant,
18          authorizing the search of "[a]ny and all emails or other electronic
            communications, which are stored within the memory of said cell
19          phone, that tend to show that alleged lewd acts with a child
            occurred." The warrant authorized the seizure of evidence of a
20          felony and evidence "which tends to show that sexual exploitation
            of a child, in violation of Penal Code Section 311.3, has occurred or
21          is occurring."

22          In a second forensic examination of defendant's phone, a greater
            amount of information was extracted. The information was stored
23          on five DVDs. At trial, 25 images of nude underage females were
            admitted into evidence. The defense did not object to the admission
24          of this evidence.

25          In a motion for a new trial, defendant claimed his trial counsel was
            ineffective for failing to move to suppress this evidence. He
26          contended the search of his phone should have been limited to a
            search of e-mails. At a hearing, defendant's trial counsel testified he
27

28  _____
    [4] Petitioner also included this issue in his state habeas petition, as the court discusses below.

did not move to suppress this evidence based on his understanding that under *People v. Diaz, supra*, 51 Cal.4th at page 84, the police could search the cell phone incident to arrest without a warrant.

B. *Analysis*

"To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.)

Defendant contends the affidavit for the search warrant provided probable cause to search his phone only for e-mails, not for child pornography. The warrant allowed the search and seizure of "emails or other electronic communications." Images are a form of communication. (*In re Ryan D.* (2002) 100 Cal.App.4th 854.) Thus, the question is whether the affidavit provided probable cause to search electronic communications other than e-mails.

"It is settled law that the magistrate must make 'a practical, commonsense decision' whether, under all the circumstances described in the affidavit, there is 'a fair probability' that evidence of a crime will be found in a particular place." (*People v. Lee* (2015) 242 Cal.App.4th 161, 175.) "[T]he magistrate's determination will not be overturned unless the supporting affidavit fails as a matter of law to support the finding of probable cause. [Citations.] Doubtful or marginal cases are resolved in favor of upholding the warrant. [Citations.]" (*Fenwick & West v. Superior Court* (1996) 43 Cal.App.4th 1272, 1278.)

Detective Phelps's affidavit indicated defendant had admitted some abuse in messages to Jane Doe No. 1's mother and in a pretext phone call. It provided evidence in the form of defendant's own statements that incriminating evidence might be found in emails on defendant's phone. Since the affidavit established that incriminating evidence had been or likely could be found in various forms of communication using defendant's phone, the magistrate could reasonably conclude such evidence might be found in other forms of electronic communication. The affidavit provided probable cause for the search warrant.

Defendant's claim of ineffective assistance of counsel fails because he has not shown deficient performance by trial counsel. A challenge to admission of the child pornography on defendant's phone would have failed. "Failure to raise a meritless objection is not ineffective assistance of counsel." (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90.)

ECF No. 15-13 at 15-18.

11

1          b.    Failure to Present Expert Witness Testimony and Diagram of Room

2        Petitioner made these allegations of ineffective assistance in a habeas petition to the

3    California Supreme Court.  ECF No. 15-26 at 4-5.  That petition was denied as follows:

4           The petition for writ of habeas corpus is denied. (*See In re Clark*
            (1993) 5 Cal.4th 750, 767-769 [courts will not entertain habeas
5           corpus claims that are successive]; *People v. Duvall* (1995) 9
            Cal.4th 464, 474 [a petition for writ of habeas corpus must include
6           copies of reasonably available documentary evidence]; *In re Swain*
            (1949) 34 Cal.2d 300, 304 [a petition for writ of habeas corpus
7           must allege sufficient facts with particularity].)

8    ECF No. 15-27.

9                    2.    Ineffective Assistance of Appellate Counsel

10       Petitioner presented this claim in the same habeas petition to the California Supreme

11    Court.  ECF No. 15-26 at 3.  That petition was denied with citation to Clark, Duvall and Swain, as

12    above.  ECF No. 15-27.

13               E.    Objective Reasonableness Under § 2254(d)

14                    1.    Ineffective Assistance of Trial Counsel

15                          a.    Failure to Challenge Cellphone Search and Resulting Evidence

16       It was not objectively unreasonable for the California Court of Appeal to conclude that a

17    motion to suppress would have been futile, necessarily dooming the ineffective assistance of

18    counsel claim.  The bottom line is that California law authorized the warrantless search of a cell

19    phone incident to arrest at the time that petitioner's phone was seized.  See People v. Diaz, 51

20    Cal.4th 84 (2011).  It is of no relevance to the ineffective assistance claim that the U.S. Supreme

21    Court later came to a different conclusion on the Fourth Amendment issue.  See Riley v.

22    California, 573 U.S. 373 (2014).  Whether or not the evidence from petitioner's phone was

23    beyond the scope of the warrant or its seizure supported by probable cause, the state of California

24    law at the time was such that a reasonable defense lawyer could well have considered the issue a

25    waste of time.  Accordingly, it was not objectively unreasonable to deny the IAC claim on the

26    performance prong.

27       Moreover, the appellate court's discussion of probable cause and the scope of the warrant

28    demonstrates that there are multiple grounds on which a motion to suppress could have been

12

1    denied in the trial court.  It is therefore clear that petitioner cannot establish the reasonable

2    probability of a different result had counsel brought a motion.  Indeed, even if the cellphone

3    evidence had been excluded, what is needed to establish prejudice on a <u>Strickland</u> claim is

4    reasonable probability of a different *verdict*.  <u>See</u> <u>Strickland</u>, 466 U.S. at 693 (describing

5    prejudice standard as a probability sufficient to undermine the court's confidence in the verdict).

6    This is not a case in which the granting of a motion to suppress dooms the government's ability to

7    prove its case in chief.  There was direct evidence of molestation in the form of Jane Doe No. 1's

8    testimony.  And petitioner's prior convictions for acts of child molestation provided more

9    powerful and more relevant propensity evidence than the images found on the phone.

10   Accordingly, it is highly unlikely that exclusion of the evidence would have affected the verdict.

11        Finally, to the extent that petitioner supplemented this claim in his state habeas petition to

12   add the allegation that counsel failed to obtain a forensic examination of the cellphone, which

13   would have shown that petitioner had not made the pornography downloads intentionally (<u>see</u>

14   ECF No. 22 at 4), this allegation is not clearly included in the federal § 2254 petition.  <u>See</u> ECF

15   No. 1 at 7.[5]  Moreover, such an allegation would not change the result.  Because petitioner

16   provided no facts in state habeas regarding what a forensic examination would have revealed, and

17   no proffer of an expert opinion, summary denial of the <u>Strickland</u> claim was not only reasonable

18   but required.  <u>See</u> <u>Wildman v. Johnson</u>, 261 F.3d 832, 839 (9th Cir. 2001); <u>Hendricks v.</u>

19   <u>Calderon</u>, 70 F.3d 1032, 1042 (9th Cir. 1995); <u>Jones v. Gomez</u>, 66 F.3d 199, 204-05 & n.1 (9th

20   Cir. 1995), <u>cert. denied</u>, 517 U.S. 1143 (1996).

21        For all these reasons, federal habeas relief is unavailable on the ground that trial counsel

22   failed to seek suppression of evidence seized from the cellphone.

23   ////

24   ////

25   _____

     [5]  The federal petition alleges that counsel "failed to do any investigation" of the cellphone, but
26   unlike the state petition does not mention forensic analysis, or expert review, or a potential
     "inadvertent download" theory.  Petitioner alleges only that counsel failed to review the
27   download that was provided in discovery.  ECF No. 1 at 7.  Failure to have identified the
     damaging evidence in advance of trial may be relevant to the failure to bring motion to suppress,
28   which was raised on appeal, but does not without more provide additional grounds for relief.

1

b.  Failure to Present Expert Witness Testimony

2

To the extent the California Supreme Court denied this claim on the basis of state habeas

3

procedural rules, the claim may arguably be defaulted.  See Coleman v. Thompson, 501 U.S. 722,

4

750 (1991).  Respondent does not assert the affirmative defense of procedural default; the answer

5

addresses only the reasonableness of the state courts' rejection of the claim.  Even if it had been

6

raised, the undersigned would elect to bypass the issue of default because the claim may easily be

7

resolved on the merits.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (a procedurally

8

defaulted claim may be denied on the merits).  To the extent there was no merits adjudication of

9

the federal claim in state court, § 2254(d) limitations on relief do not apply and the undersigned

10

considers the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160, 1167-1168 (9th Cir. 2002).

11

For the reasons that follow, the result would be the same if the California Supreme Court's order

12

were considered a summary merits denial and reviewed for § 2254 reasonableness under Richter,

13

562 U.S. at 102.

14

Petitioner is not entitled to relief on the ground that trial counsel failed to present the

15

testimony of Dr. O'Donohue, for the simple reason that O'Donohue's opinion was limited to the

16

MDIC interview of Jane Doe No. 2 and petitioner stands convicted only of crimes against Jane

17

Doe No. 1.  The report submitted to defense counsel by Dr. O'Donohue—which was not attached

18

to any state or federal habeas petition by way of proffer—is located in the trial record as an

19

attachment to one of petitioner's motions for new trial, II CT 499-519 (ECF No. 15-2 at 208-228).

20

It is an evaluation of the techniques used in the MDIC interview of Jane Doe No. 2.  Id.  This

21

court need not entertain the question whether the failure to present Dr. O'Donohue's testimony in

22

defense of the Jane Doe No. 2 count constituted unreasonable performance, because petitioner's

23

conviction on that count was overturned on appeal.  Nothing in the O'Donohue report had

24

exculpatory or impeachment value as to Jane Doe No. 1, who was not the subject of the report.

25

Accordingly, even assuming error in counsel's decision not to use the expert opinion as to Jane

26

////

27

////

28

////

14

1    Doe No. 2, that error cannot have affected the verdict on the Jane Doe No. 1 counts.[6]    Absent a

2    showing of exculpatory evidence that the expert would have provided as to Jane Doe No. 1, this

3    claim fails.

4    Petitioner's conclusory allegations in this regard cannot support relief under Strickland.

5    See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations do not merit habeas

6    relief).   Absent facts which could establish prejudice, specifically a proffer of available expert

7    testimony that would with "reasonable probability" have resulted in a different verdict, this claim

8    fails under any standard of review.   See Wildman, 261 F.3d at 839 (petitioner failed to show

9    prejudice where he "offered no evidence that an arson expert would have testified on his behalf at

10    trial.  He merely speculates that such an expert could be found."); Hendricks, 70 F.3d at 1042

11    ("Absent an account of what beneficial evidence investigation into any of these issues would have

12    turned up, [petitioner] cannot meet the prejudice prong of the Strickland test.").

13                                c.    Failure to Present Diagram of Room

14    Here too the court elects to bypass consideration of any arguable default.   This alleged

15    instance of ineffective assistance is entirely conclusory and must rejected on that basis.   Although

16    petitioner identifies the evidence he thinks counsel should have used—a hand-drawn diagram of

17    his floorplan—both the state and federal petitions are lacking any such diagram or any specific

18    description of such a diagram, let alone an explanation of how that diagram would have

19    demonstrated that Jane Doe No. 1 had not been in petitioner's room. No prima facie Strickland

20    claim arises from these allegations.

21                                3.    Ineffective Assistance of Appellate Counsel

22    For the reasons already explained, petitioner's allegations of ineffective assistance of trial

23    counsel fail to provide grounds for relief.   This dooms the claim of ineffective appellate

24    _____

25    [6] Dr. O'Donohue testified at the hearing on the new trial motion. II CT 565-566 (ECF No. 15-2 at 274-275).  His testimony that he had not been provided with all relevant records and

26    information was a reference to records pertaining to Jane Doe No. 2.  III RT 679-684 (ECF No. 15-6 at 116-121).  Although the hearing did also inquire into Dr. O'Donoghue's thoughts

27    regarding Jane Doe No. 1, neither the new trial motion and its attachments, the hearing transcript, nor anything the undersigned has identified in the various habeas petitions, includes a proffer of

28    expert testimony specific to Jane Doe No. 1.

                                            15

1    representation.  Appellate counsel has no constitutional obligation to raise even non-frivolous

2    issues which, in counsel's judgment, have little or no likelihood of success.  Jones v. Barnes, 463

3    U.S. 745, 751-54 (1983).  To the contrary, winnowing out weak arguments on appeal is a

4    hallmark of effective advocacy, not an indicator of ineffectiveness.  Smith v. Murray, 477 U.S.

5    527, 536 (1986); see also Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989).  The

6    presumption of effective appellate advocacy is overcome only where the omitted issues are

7    "clearly stronger" than those presented on appeal.  Smith v. Robbins, 528 U.S. at 288.

8         Here it is clear from the appellate record that counsel focused on the strongest issues,

9    including the successful Confrontation Clause challenge to admission of the Jane Doe No. 2

10   MDIC interview.  This resulted in one of the three substantive counts of conviction being

11   reversed, along with a sentencing enhancement for multiple victims.  Because the primary issue

12   that appellate counsel pursued was meritorious and those forwarded here are not, petitioner

13   cannot obtain habeas relief on grounds of ineffective appellate counsel.  The facts and procedural

14   history of this case are incompatible with unreasonable appellate performance and with prejudice

15   from the winnowing of potential appellate issues.

16        II.    Claim Three: "Reversible Prejudicial Court Error"

17              A.  Petitioner's Allegations and Pertinent State Court Record

18        Petitioner seeks relief on the basis of "reversible prejudicial court error."  The supporting

19   facts are, in full, as follows:

20              The nature of Count 3 was extremely prejudicial to Defendant.
                While such charges are always difficult, the presence of multiple
21              victims make them all the worse.  Had this prejudicial error not
                occurred, defendant would have only had to deal with a single
22              victim lessening his burden of proof.

23   ECF No. 1 at 9.

24        The undersigned construes this claim as asserting that the jury's exposure to the MDIC

25   interview of Jane Doe No. 2, which was admitted in violation of petitioner's rights under the

26   Confrontation Clause, also rendered the trial fundamentally unfair as to the Jane Doe No. 1 counts

27   of which petitioner stands convicted.

28   ////

16

1        B.   The Clearly Established Federal Law

2        The erroneous admission of evidence violates due process only if the evidence is so

3   irrelevant and prejudicial that it renders the trial as a whole fundamentally unfair.  Estelle v.

4   McGuire, 502 U.S. 62 (1991).  The Supreme Court has rejected the argument that due process

5   necessarily requires the exclusion of prejudicial or unreliable evidence.  See Spencer v. Texas,

6   385 U.S. 554, 563-564 (1967); Perry v. New Hampshire, 565 U.S. 228, 245 (2012).

7        C.   The State Court's Ruling

8        This issue was presented to the California Supreme Court as part of a claim that admission

9   of the Jane Doe No. 2 evidence, in combination with ineffective assistance of counsel, constituted

10  "reversible prejudicial error."  ECF No. 15-26 at 6.  The state court rejected the claim on the state

11  law grounds discussed above.  ECF No. 15-27.

12        D.   Objective Unreasonableness Under § 2254(d)

13       For the reasons that follow, federal habeas relief is unavailable.  It is undeniable that the

14  Jane Doe No. 2 MDIC interview, which was admitted in violation of petitioner's rights under the

15  Confrontation Clause, constituted powerful propensity evidence entirely apart from its probative

16  value vis-à-vis the Jane Doe No. 2 count.  The undersigned finds it entirely plausible that the

17  jury's exposure to that evidence influenced the jury as to the Jane Doe No. 1 counts.  However, a

18  plausible theory of prejudice does not support habeas relief in federal court.

19       To the extent that § 2254(d) standards apply, see Richter, 562 U.S. at 102, relief is

20  unavailable because no U.S. Supreme Court precedent has found the admission of prejudicial or

21  propensity evidence to violate due process.  See Wright v. Van Patten, 552 U.S. 120, 125-26

22  (2008) (per curiam) (if no Supreme Court precedent controls a legal issue raised by a habeas

23  petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable

24  application of, clearly established federal law); see also Holley v. Yarborough, 568 F.3d 1091,

25  1101 (9th Cir. 2009) (Supreme Court has not clearly held that the "admission of irrelevant or

26  overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of

27  the writ."); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) (recognizing that U.S.

28  ////

17

1    Supreme Court has never held propensity evidence violates due process), cert. denied, 549 U.S.

2    1287 (2007).

3         Even if the claim is reviewed de novo, petitioner cannot prevail.  Proof of actual prejudice

4    to the defense case from a trial error is "a necessary but not sufficient element of a due process

5    claim."  United States v. Lovasco, 431 U.S. 783, 790 (1977).  The undersigned cannot conclude

6    that the trial of the Jane Doe No. 1 counts was rendered fundamentally unfair by the jury's

7    exposure to the Jane Doe No. 2 interview.  See Estelle, 502 U.S. at 72 (recognizing fundamental

8    fairness as the touchstone of due process).  Petitioner had been previously convicted of child

9    molestation, and under California law—which expressly permits the consideration of propensity

10   evidence in sex offense cases, see Cal. Evid. Code § 1108—those convictions were properly

11   before the jury.  The jury also was permitted to consider the fact that images of child pornography

12   were found on petitioner's phone.  In other words, there was ample propensity evidence

13   independent of the Jane Doe No. 2 interview, rendering that evidence cumulative.  The jury was

14   instructed on the prosecutor's burden of proving the elements of each count beyond a reasonable

15   doubt, and was specifically instructed that propensity evidence is not sufficient by itself to prove

16   guilt, which must be proved by the prosecution beyond a reasonable doubt.  II CT 300, 327 (ECF

17   No. 15-2 at 9, 36).  The jury is presumed to have followed those instructions.  See Weeks v.

18   Angelone, 528 U.S. 225, 234 (2000).  Jane Doe No. 1 testified and was subject to cross-

19   examination, and the jury was able to evaluate her credibility.  The evidence as to Jane Doe No. 1

20   was not so close that there is a reasonable likelihood the propensity evidence influenced the jury

21   so as to relieve the prosecution of its burden of proof, as petitioner alleges.

22        In light of the trial record as a whole, this is simply not a case in which admission of the

23   evidence violates "fundamental conceptions of justice."  Lovasco, 431 U.S. at 790 (quoting

24   Mooney v. Holohan, 294 U.S. 103, 112 (1935)).  In Dowling v. United States, 493 U.S. 342

25   (1990), the defendant claimed that his due process rights were violated by the testimony at his

26   robbery trial of the victim of another robbery, of which he had been acquitted.  The Supreme

27   Court held that introduction of the evidence did not violate the due process test of fundamental

28   fairness.  Id. at 352.  Here as in Dowling, the possibility of prejudice from the evidence does not

1   establish a violation of "those 'fundamental conceptions of justice which lie at the base of our

2   civil and political institutions'… and which define 'the community's sense of fair play and

3   decency.'"  Id. at 353 (citations omitted).  For all these reasons, petitioner is not entitled to relief.

4       III.       Claim Four:  Illegal Search of Cell Phone

5               A.  Petitioner's Allegations and Pertinent State Court Record

6           Petitioner alleges that his cell phone was seized when he was arrested on August 8, 2012.

7   A warrant for a search of the phone was subsequently prepared on the basis of a recorded jail

8   visit, in which petitioner told his wife that he had emailed a psychiatrist and said, "That's

9   evidence against me."  The warrant sought emails and other electronic communications.  A

10  complete extraction of the cellphone was then performed on October 17, 2012.  A special master

11  was appointed to review extracted emails because of the potential for privileged communications.

12  On January 9, 2014, the prosecutor reviewed extracted data other than the emails, and found

13  "several photos of underage females posing in underwear and swimsuits."  The photo albums on

14  the phone did not come within the scope of the search warrant.  ECF No. 1 at 11-12.

15          This issue was the subject of a motion for new trial, II CT 452-467 (ECF No. 15-2 at 161-

16  176), and was raised and rejected on direct appeal, ECF No. 15-8 at 3.

17              B.  This Claim is Non-Cognizable in Federal Habeas

18          Where a state provides an opportunity for full and fair litigation of a Fourth Amendment

19  claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the

20  evidence obtained in an unconstitutional search or seizure was introduced at trial.  Stone v.

21  Powell, 428 U.S. 465, 482 (1976).  Stone effectively renders Fourth Amendment claims

22  unreviewable in federal habeas, except in cases where the state failed to provide a forum for

23  litigation of the issue.  When a state prisoner presents a Fourth Amendment claim in federal

24  habeas, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not

25  whether he did in fact do so or even whether the claim was correctly decided."  Ortiz-Sandoval v.

26  Gomez, 81 F.3d 891, 899 (9th Cir. 1996).  The Ninth Circuit has held that California's statutory

27  framework for litigating suppression issues satisfies the "full and fair opportunity" requirement

28  under Stone v. Powell.  Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990).  Because

1   petitioner had the required opportunity to litigate in state court, federal habeas relief is

2   unavailable as a matter of law.  See Myers v. Rhay, 577 F2d 504, 508 (9th Cir. 1978) (even

3   assuming unconstitutional arrest, Stone bars relief); Terrovona v. Kincheloe, 912 F. 2d. 1176,

4   1178 (9th Cir. 1990) (Stone bars federal review of a state prisoner's warrantless arrest claim).

5                                                    CONCLUSION

6          For all the reasons explained above, the state courts' denial of petitioner's claims was not

7   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

8   AEDPA standards, petitioner has not established any violation of his constitutional rights.

9   Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

10  denied.

11         These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

16  he shall also address whether a certificate of appealability should issue and, if so, why and as to

17  which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

18  within fourteen days after service of the objections.  The parties are advised that failure to file

19  objections within the specified time may waive the right to appeal the District Court's order.

20  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21  DATED: November 5, 2024

22  _____

23  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                                                    20